**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| **HORACE GLENN** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 18-13877 (ES)** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **SIMS,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

SALAS, DISTRICT JUDGE

This matter is before the Court upon a motion to dismiss filed by defendants "Mr. Sims" and Keisha Fisher (collectively, "Defendants"). (D.E. No. 9 ("Motion" or "Mot.")). Defendants seek to dismiss the complaint (D.E. No. 1 ("Complaint" or "Compl.")) filed by plaintiffs Horace Glenn, Sharrod Hargrove and Juan Zalazar (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs filed an opposition to the Motion (D.E. No. 15), and Defendants filed a reply (D.E. No. 16). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    Background[1]

Plaintiffs are civilly committed individuals who are currently confined at the Special Treatment Unit ("STU") at East Jersey State Prison in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24, *et seq.* According to the

---

[1]    The Court must accept Plaintiffs' factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Complaint, each plaintiff was placed in "Temporary Close Custody" ("TCC")[2] at some point in June 2018 and improperly held in TCC beyond the 72 hours permitted by regulation. (Compl. ¶ 18). Specifically, Glenn was placed in TCC on June 22, 2018, and he was not released until July 2, 2018. (*Id.* ¶ 30). Hargrove was placed in TCC on June 5, 2018, and released on June 11, 2018. (*Id.* ¶ 38). On June 6, 2018, Zalazar was placed in TCC and released on June 11, 2018. (*Id.* ¶ 45).

Plaintiffs also make a number of allegations about the conditions of the cells they were in while in TCC. According to the Complaint, Glenn was placed in a cell that was "filthy." (*Id.* ¶ 31). He states that "inside the fixed locker, floor, bunk, and table surfaces each contained a multitude of debris, including but not solely limited to, dried food particles and fluids, cut human finger nails, human hair, stuck soiled toilet tissue, dust, and dirt." (*Id.*). Glenn also alleges that he did not have access to any of his personal property, including but not solely limited to, hygiene items, clothing, bed linen, and that he was neither permitted to shower or use a telephone. (*Id.* ¶ 32). Hargrove and Zalazar make similar allegations about the state of their cells in TCC. (*Id.* ¶¶ 39 & 46). Hargrove and Zalazar also allege that they were not permitted to launder their personal clothing or bed linen, to take a shower, or to use the telephone. (*Id.* ¶¶ 40 & 48). Zalazar further alleges that he was denied access to a telephone to make a legal call to his attorney. (*Id.* ¶ 47). The Complaint further alleges that while Glenn was in TCC, he was also denied all sex offender specific treatment. (*Id.* ¶ 33).

Based on the foregoing, Plaintiffs raise several claims against the Defendants. Glenn raises a claim against the Defendants for denial of his sex offender treatment for the additional time he was held in TCC. (*Id.* ¶¶ 53–61 (Count I)). All Plaintiffs allege (i) a conditions of confinement

---

[2]     "Temporary Close Custody" means the removal of a resident from the general population, or other assigned status, with restriction to a room in a designated area for a period not to exceed 72 hours. N.J.A.C. § 10:36A-1.4.

claim against Defendants for the state of their TCC cells (*id.* ¶¶ 62–78 (Count II)), (ii) an equal protection claim against Defendants for failing to release them in a timely manner from TCC, even though others were properly released (*id.* ¶¶ 79–93 (Count III)), and (iii) a claim for "pain, suffering, and mental anguish" (*id.* ¶¶ 94–98 (Count IV)). Additionally, Plaintiffs raise corresponding claims under the New Jersey Constitution. (*Id.* ¶¶ 99–111 (Counts V and VI)). As a remedy, Plaintiffs seek only monetary damages. (*Id.* ¶ 112).[3]

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and Plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the Court is not required to accept as true "legal

---

[3]    Although Defendants apparently move to dismiss the entire Complaint, they do not specifically address why Counts IV, V, or VI should be dismissed. Thus, the Court does not analyze those claims.

conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## III.    DISCUSSION

### A. Official Capacity

Defendants first move to dismiss all claims against them in their official capacity because Plaintiffs are only seeking monetary damages.  (Mot. at 6–7.)

Section 1983 imposes liability on "[e]very person who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects a person to a deprivation of certain rights.  42 U.S.C. § 1983.  State officials, sued in their official capacities, are not "persons" subject to a damages suit under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  In opposition to Defendants' argument, Plaintiffs correctly state that suit may be brought against state officials in their official capacity for prospective injunctive relief and declaratory relief, *see Will*, 491 U.S. at 71, n.10;  however, their Complaint contains no request for such relief.  Plaintiffs only seek monetary damages for incidents

that occurred in the past.  (Compl. ¶ 112).  Accordingly, Defendants' Motion to Dismiss the official capacity claims is GRANTED.

### B. Personal Involvement

Defendants next argue for dismissal of all claims against them because Plaintiffs fail to allege personal involvement by the Defendants in the constitutional violations.

Section 1983 liability cannot be imposed based on a theory of respondeat superior.  *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of respondeat superior").  Rather, a plaintiff must allege that the defendant supervisor had personal involvement in the alleged wrongs.  *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The Third Circuit has recognized two ways in which a supervisor may be shown to have had personal involvement: (i) if the supervisor either "established and maintained a policy, practice or custom which directly caused the constitutional harm," or (ii) if the supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."  *Parker v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).  Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

According to Defendants, Plaintiffs do not state a claim for policy liability because their allegations make clear that these Defendants in fact set proper policies, which were then violated by others.  (Mot. at 9).  With regard to Plaintiffs' conditions of confinement claim (Count II), while Defendants may be correct that Plaintiffs do not appear to allege the current policies are deficient, they fail to address the allegations by Plaintiffs that these individuals were aware of the state of

the TCC cells and of the failure to provide personal items by virtue of other residents' submission of administration remedy forms as far back as 2015, but did nothing to correct the situation. (Compl. ¶¶ 71 & 73). These allegations would suggest Plaintiffs are raising a "knowledge and acquiescence" claim or a failure to train/supervise claim[4] against these Defendants—claims which Defendants do not address in their Motion. As such, their Motion to Dismiss Plaintiffs' conditions of confinement claim (Count II) will be denied.

Defendants are also correct that the Complaint as drafted does not contain any allegations against them to suggest personal involvement in Glenn's claim for denial of sex offender treatment (Count I) or the equal protection claims for failure to release Plaintiffs in a timely manner (Count III). However, in their Opposition, Plaintiffs state that "resident(s) have been informed, via the JPay remedy system, that the Administrator is the person who decides which residents may be placed in TC," which would suggest personal involvement by the Defendants. (D.E. No. 15 at 14). Accordingly, while the Court will grant Defendants' Motion to Dismiss these two claims for lack of personal involvement, the Court will do so *without prejudice*, and permit Plaintiffs to file an amended complaint to address this deficiency.

## IV.    CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED with respect to any official capacity claims, and with respect to Count I (denial of sex offender treatment claim) and Count III (equal protection claim). Defendants' Motion is DENIED with regards to the conditions

---

[4]       *See Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) ("Aruanno's claims that general conditions violated his constitutional rights might be construed as alleging that the supervisors failed to train, supervise, or discipline their subordinates").

of confinement claim (Count II). Plaintiffs may file an amended complaint as stated in this Opinion. An appropriate order follows.[5]

s/Esther Salas
**Esther Salas, U.S.D.J.**

---

[5] Defendants also argue that any claim for denial of access to the courts by Zalazar should be dismissed, however, in their Opposition, Plaintiffs clarify that no such claim was intended. (D.E. No. 15 at 16).